We can move on to another fact-specific case, number 16-51413, Armendariz v. Wal-Mart. May it please the Court. Good morning. My name is John Mobs. I represent the appellant, Ms. Armendariz, in this case. As you noted, this is a fact-specific case. It's an appeal from a summary judgment in a premises liability cause of action. The issues for the Court are simply whether there were factual disputes as to whether Wal-Mart knew of the dangerous condition, and specifically because it created the dangerous condition, and whether there are genuine fact issues as to whether the condition is open and obvious. So I'll begin with Wal-Mart's knowledge of the condition. Of course, an element of a premises liability suit in Texas is the premise owner's factual or constructive knowledge of the dangerous condition. That's often shown in Texas by showing that the condition existed for a sufficient period of time that a reasonable premises owner would have known. That's the direction the district court went in the opinion and order granting summary judgment. That's not the theory Ms. Armendariz relies upon in this case. In this case, it's our position that there's evidence raising a fact issue as to whether Wal-Mart knew of this condition because Wal-Mart created this condition. And under Texas law, evidence that a premise owner created a condition allows a jury to find that the owner knew of that condition. Of course, actual knowledge can be shown by circumstantial evidence. In this case, I think the circumstantial evidence of the very nature of this dangerous condition and Wal-Mart's practice in placing these kind of pallets on the floor allows a jury to find that it created this condition. I mean, this is very interesting. I'm no stranger to big box stores, and I don't recall ever seeing a display like the one that's in your photograph. But what I also don't understand, and this one doesn't have the pallet askew, which Ms. Armendariz apparently is undisputed that it was twisted somehow, right? Yes, Your Honor. The language used in the affidavit on most of the testimony is catty corner. The testimony is the display itself, the merchandise display itself is straight, but the underlying pallet was misplaced. I do need to point out that although that photograph is helpful to me as well in envisioning the circumstances, Ms. Armendariz stated in her affidavit that that's not a photograph of the actual display on which she tripped. So it's useful to me, but probably of limited utility in the analysis of whether there are So the jury would have no graphic of the actual situation? There's none in the record. Let me put it that way. There's testimony that photographs were taken of the situation at the time, but that is not the photograph. So whether those may be uncovered with further discovery somehow, or maybe they're misplaced and will be found, I can't answer that. But as of now, there's no other photograph in the record. Well, I didn't understand how the injury occurred, because even if the pallet were turned at an angle somehow, the lady's going down the aisle with one of those big carts, I presume, not a little cart, but a big cart, and either looking ahead or momentarily distracted toward the nail polish. And I do not see how the cart would not have gotten caught there instead of her foot. Certainly the cart was between her and the pallet at some point and obscured her vision of it. And at some point either she turned her cart sideways or turned it the other direction towards the display with the idea of putting it in front of the display to get I mean, I'm speculating to that too, Judge. I don't think proximate causation is an issue in this appeal. But obviously her foot got caught in the pallet, and I don't think that's really disputed either. How it came to be that the cart was no longer between her and the pallet, I can't answer that for you. But she fell. I beg your pardon? But she fell. But she fell. She caught her foot in the pallet, in the side of the pallet, tripped and fell and sustained some serious injuries. And the jury could find that that condition was created by Wal-Mart. The issue is not whether, as stated throughout the appellee's brief, whether Wal-Mart moved the pallet, but whether it put it there in that position in the first place when it created the merchandise display. The evidence, of course, is that Wal-Mart uses these pallets to display merchandise, that it carries them out on the sales floor. And I think significantly that it does so using pallet jacks. That's on page 819 of the record. What's a pallet jack? A pallet jack is a… Yeah, it's like a hand jack that you would use with wheels on the bottom that you kind of lift something up. It has like a part that lifts up. It's a small forklift. It's a small forklift, yeah. So, and the point of that is it's not a grape on the floor. It's not a spilled liquid. It's not something that a customer could easily… Well, what age person was she? What is her age? Judge, she has an adult daughter. Beyond that, I can't speak to her age. What is her age? Her age? I can't speak to her age. I can tell you she has an adult daughter, but I can't remember how old she is. Old enough to have an adult daughter is as close as I can get you. North of 50 or 60 or… Judge, I just don't know the answer to that question. I would say north of 50 is reasonable to believe. North of 60, I don't know that. Let me see if we know this. We know that there was a display that was on a pallet in a Walmart. Yes. We know that Walmart put the display on the pallet. Yes. We know that Walmart put that pallet there, right? Yes. Now, whether or not they put it catacorded when they installed the display, we don't know whether or not Walmart did that. I think it's unreasonable to believe that Walmart did not do that. All right, but what I'm saying is we don't know whether or not… There's no direct testimony that Walmart did that. The question, though, is whether or not Walmart had actual or constructive knowledge of that condition, that the pallet was catacorded and allowed that somebody's foot could be caught in it. That is true, but if Walmart created that condition, that's sufficient to impute knowledge of the condition. I'm not opposing. I'm just trying to establish what we know. Unless someone else, unless a third party or the plaintiff moved it, then Walmart put it there so there would be actual or constructive knowledge of it being in that position. That's my point exactly. All right. Yes, and on this record, I think the jury could reasonably find that Walmart put that there because it's not a grate. It's not something that a customer is going to drop and it's going to roll across the floor. It takes equipment to move this thing. I think there's a second reason why the jury could find that Walmart created this dangerous condition apart from… What precisely is the danger? The fact that it's misaligned or the fact that it's sticking out from under the nail polish or what? Right, and there are two. One is the one we've been talking about, that it's… I think those are the same things. It's misaligned. It's sticking out from under. So a person walking down the aisle looking at the nail polish display would not expect to trip over this thing sticking out. Walmart says it was open and obvious. Walmart says it's open and obvious. Right, and that's a separate issue. And should I address that now? Go ahead. No, no. That's the issue. I'm trying to frame the issue about its obviousness. Right. Walmart does say it's open and obvious, but open and obvious under Texas law means something that is so patent, so obvious, that any reasonable person is charged with full knowledge of the danger. It's not the opposite of concealed or invisible. It's just the opposite. It's just not obvious. And in determining whether a condition is open and obvious under Texas law, you have to look to all of the circumstances. In the Texas Supreme Court's opinion on the coffee case, they talked about the – that case also involved a palette or display palette that happened to be empty. They talked about the height of it, the color of it blending in with the floor, and its location on an end cap. But they said that was open and obvious, didn't they? No, they said it was not open and obvious. So in this case, we have Ms. Armendariz's testimony that, again, it was low to the ground. She was pushing her cart. She was looking at the merchandise. She was keeping a proper lookout, as well as her daughter's testimony, that any person walking through the store looking at the merchandise would not have seen this thing sticking out from the side of the merchandise display. There's a case that's like this. It's the Texas Court of Appeals' opinion, Safeway v. Leck. That case involved produce trimmings that were on the floor of a grocery store. And the grocery store said, hey, these things are open and obvious. They're scattered across the floor. And the Court of Appeals wrote, in its opinion, that they considered the fact that the shopper was pushing her cart and looking at merchandise in the manner contemplated shoppers would do and upheld the jury verdict finding that the condition was not open and obvious. And I think that's the same here. We don't expect every reasonable shopper to walk around the store looking at the footing of the displays to make sure they don't trip over anything. And, in fact, that is why Walmart, in its policies, trains its workers that exposed corners can be trip hazards. They're not open and obvious. People trip over them. There's at least enough raising the fact issue to avoid summary judgment on the open and obvious doctrine. I alluded to this a moment ago. Let me just touch on it, that there is a second reason why the pallet was an unreasonably dangerous condition. Aside from the fact that it was sticking out sideways, it was an open-sided pallet. Walmart, at least sometimes, has two different types of pallets that it uses to display these merchandise. One is closed-sided plastic pallets. The other type is open-sided wooden pallets. This was an open-sided wooden pallet. You're saying that her foot went into the pallet and then she tripped? That's correct. Her testimony is the pallet grabbed her foot, but I think that's what she means, that her foot kicked into the pallet. Ms. Armendariz, when she formerly actually worked as a manager for Walmart, was trained and trained her workers that we don't use these open-sided pallets on the sales floor because they create a hazard, they cause accidents. I have to say that this is really a strange accident. It's not obvious to me at all that an open-sided pallet is more dangerous than another one. The idea that you're walking so close to the display that you're going to stick your foot in there, it's just sort of bizarre to me. But if it's a closed-sided pallet, a person's foot won't stick into it. But there are a lot of displays at those stores, this I know from my experience, where the pallet or whatever is holding up the display. It's like several inches. The display sticks out from whatever the support is, right? So anybody could stick their foot under there under any circumstances, pallet or not. I suppose that could happen. I don't know about the size of your client's feet, but I've got big ones. So I'm often hitting up against stuff and bumping against things because I've just got big feet. What may not be a hazard for a smaller foot may be a problem for a larger foot. So the prudent thing to do is don't create the hazard. The prudent thing to do is don't create the hazard. And I will say it's not disputed on appeal that this was a dangerous condition of the premises. Some old men I know fall down in strange places. Sometimes people fall down, and it's nobody's fault. But there's evidence in this case that Walmart created an unreasonably dangerous condition. But I mean you're saying, well, what you have there is Ms. Almendaris' testimony that the open-sided pallet was disfavored, right? You don't have Walmart's policy on that, do you? That's correct. We only have her testimony that the open-sided pallets were – that Walmart employees were trained not to use them because they cause accidents. Okay. Well, I think unless you have something else, we've got your argument. Thank you, Your Honor. Okay. Thank you. Mr. Piacenti? Good morning. May it please the Court. My name is Arthur Piacenti, and I represent the appellees in this case, Walmart Stores, Inc. and Walmart Stores, Texas, LLC. I'd like to begin by noting two procedural points. The first is that there's no argument in this case that Walmart failed to meet its initial summary judgment burden, particularly on the actual notice element. So really, it's undisputed that the burden of proof shifted to the plaintiff to show why summary judgment shouldn't be granted, at least on that element. And there's also no argument in this case by the plaintiff that she needed more time to conduct discovery or further develop the evidence. So the only question today for this Court is whether there is enough evidence on file to overcome summary judgment. And the answer to that question, is there enough evidence, is no, or double no, since there's actually two independent grounds on which the summary judgment can be affirmed in this case. So the first ground is the actual notice element. And what plaintiff claims is that Walmart had actual notice because it created the misalignment of the palette. And so our question is, what's the evidence? And as counsel has already discussed, part of that evidence is that the display was placed on the floor with a palette jack. And it's undisputed. It is undisputed that that's how merchandise is placed on the floors with a palette jack, but there's no evidence in this case that that this particular palette was crooked while it was being carried out or that it was put down on the floor crooked. There's simply no evidence. There's just speculation that that's actually what happened. Is there evidence of how much the display weighed? That's an excellent question. And the answer is there is no evidence. We don't know whether or not an individual coming in, the third party or a plaintiff, could have actually moved the palette around on that display. We don't know that. That is exactly true and is probably one of two most of the most important points about this case. But what we do know is we know Walmart put the display there. We know that Walmart put the display there, but we don't know what it looked like. We don't know that it was crooked, and we don't know that a customer or a vendor or someone else comes in. If it weighed 500 pounds, we could reasonably infer that a single customer coming in didn't move the palette around. Absolutely. Absolutely. We don't know it. We don't know that. And I think that's the most important point about this case, because Walmart's not being evidence of how the palette got in that condition. And one way the plaintiff could have addressed that is by doing some further discovery and depositions and establishing this display. And this is a nail-polish display. Why is it a reasonable inference if we don't know the weight that Walmart put it there like that and it was never moved? Well, we — well, because we don't know that — I'm sorry? Why is it a reasonable inference that Walmart placed it exactly where it was at the time of the accident and that it was never moved? Why isn't that a reasonable inference? Because it's just a guess. Because what could have happened — what could have happened? It's just a guess. You have to use a — you have to use a jack, hydraulic jack, underneath to move those things in and put them down, yet you're saying that we don't know whether an individual without a jack could put a — accidentally push that thing out. That's correct, Judge. And the reason that that's true is because — and you can look by — you can see by looking at the photograph, this is a nail-polish display. According to the plaintiff, it's almost empty, or at least some sides of it are almost empty when she comes up to it. It's made out of cardboard. All you've got is an almost empty cardboard display on top of a wooden pallet, which if you bump or push those things around, they move pretty easily. And I don't want to be testifying before the Court to that, because I'm not a witness in this case, and none of the judges are a witness in this case. Nobody in this room is a witness in the case. And that's what we're missing from the plaintiff's evidence, is somebody to say, that thing was so heavy, there's no way you could bump into it with a cart. There's no way you could kick it. You couldn't have some kids engaging in horseplay that bump into that thing and move it askew. That's the evidence they need to get to the reasonable inference. Well, if that thing is so heavy, only Walmart with its pallet jack and — and equipment could have done that. That — there's no evidence of that in this case. Step back a moment. Why are there no photos of the — of the scene of the accident? I'm sorry, Judge? Why are there no photos of the scene of the accident? Well, there are photos of the scene of the accident, and the photo that the Court has before it is — is an accident scene photo. Now, there's a dispute between the plaintiff and Walmart, and perhaps in this case we'll go to trial, we're going to have to get into all that, about what was — what was the accurate depiction of — of that display at the time of the accident and after the accident. The plaintiff says that it was catty-corner, that the platform was catty-corner. Nobody from Walmart testified to that or could recall that being the case. What might have happened is the plaintiff simply tripped on that pallet, and maybe it was very slightly askew as — as maybe that's — it could be in that photograph, and the plaintiff just misremembered it as being completely catty-corner. I don't know. But if — there may be a dispute, you know, at trial about what's — what the — what the case was, but if you go back and you read in detail the plaintiff's testimony, it's very confusing about was it the same brand of nail polish, was it not the same brand of nail polish, was this the display? The point is what she caught her foot on and how she fell, and — and this was apparently a very serious fall, and — and no doubt a bunch of employees came up shortly afterwards, and I'm just astonished that somebody couldn't put a — a cell phone photo into the record on summary judgment. Well, and — and — and, Judge, that's exactly what happened, is that there were a number of photos taken, and you've got one of them in front of you, and there were other photos that show basically the same setup, and Walmart's employees have testified those were the accident scene photos they took, and it's simply a dispute with the plaintiff about what that thing actually looked like. But there's — but — So you're saying, as to the actual knowledge business, that it — it — it was her burden to put in evidence that the display was created in such a way that no one except Walmart could have — could have dislodged it and put it in a dangerous condition? I think that's a — I think that's a fair statement. I think that you can't just reasonably infer if it could have been a vendor, it could have been the plaintiff, it could have been a different customer. We don't know how this thing got askew. We don't know that it was too heavy to be put askew by somebody other than Walmart. It's not a reasonable inference, well, Walmart must have done it. Could have been anybody, but Walmart must have done it. But you're not even — you're not even arguing that it was askew, right? Well, I'm assuming for purposes of — we have a plaintiff who's testifying that it was. So we're on summary judgment. We're not at trial, so I'm going to accept that it was askew. I'm going to accept that it was a serious injury. I'm going to accept that she tripped and fell, and that was the cause of the injury. We're — Walmart's not disputing any of that for purposes of summary judgment. We're accepting all that. But what we're saying is — what Walmart's position is, is that there's no evidence that it was Walmart that caused that thing to be — that platform to be askew. It could have just as easily been a customer, a vendor, somebody else. We don't know that. And that was the plaintiff's burden, to put on evidence that it was Walmart versus somebody else, and also that it was — that it was obvious. And so that's — so there's facts that are disputed and there's facts that are undisputed, but we don't think that it can be shown that there's no evidence that thing was so heavy that only Walmart could have done it. But for purposes of summary judgment, you are agreeing that it was askew. For purposes of summary judgment, yes, we are assuming that it was askew. And not only just a little bit askew, like maybe it is in that photograph, but the way that the plaintiff is saying is that it's catty-corner. So it's on a diagonal, and it's actually so far sticking out that it's actually blocking the aisle, and you can't even get a cart through because it's sticking so far out. That's the plaintiff's testimony, and that's — and we're accepting that for purposes of summary judgment. And I think that that testimony actually creates an issue on the obviousness, because if you can't get a cart through and it's sticking so far out, it's blocking the aisle, how is that not obvious? I thought there was also evidence that the assistant manager asked his coworker why wasn't the pallet placed right? And there was a conversation between the assistant manager and Amadera's daughter regarding the placement of the pallet. That's correct. And again, this is evidence that if this case were to go to trial, it would in all probability be in dispute. But for purposes of summary judgment, the plaintiff's got an affidavit. She's saying that those things occurred. And so I'm not — that Walmart is not disputing here, but the point about that is it's speculation because the manager is not saying, I saw it. What the manager is saying is after the fact, he's looking at it and asking a question. It's like saying there's — Why wasn't — look at the question. Why wasn't the pallet placed right? That's not — Right. And if you had turned around and asked that manager, well, are you affirmatively saying that Walmart placed that thing in correctly? We don't know. I mean, there's other possible — for example, the assistant manager might have been operating under the customer is always right. Amadera could conclude that the Walmart guy said it wasn't placed right, that the guy that works there and does this thing knew that that particular — at that point, when he saw this, saw that it was not where it should be. So at least you know that. It's not where it should be. That's — I don't — I wouldn't dispute that. But the fact that Walmart's responsible for it because they didn't place it correctly, that's speculation. That's speculation on part. And that's the key evidence. The key evidence is who's responsible for it, and that is pure speculation for the assistant manager, because here's — really, here's the crux of the case, is that you've got an assistant manager allegedly asking this question. The assistant manager doesn't remember asking this question, but the plaintiff puts the words in his mouth, and he says, why wasn't that pallet placed correctly? How does the assistant manager or anybody, any Walmart employee or any other person, look at a crooked pallet on the floor and magically look into the past and say, oh, it's crooked. I see how it got crooked. Walmart placed it that way when it originally placed the display, versus it was placed correctly later on. Someone comes on and comes around and bumps it or — My reasonable reading of that is that somebody screwed up placing the pallet, and that's what the assistant manager was saying, in very plain English. He just says, why wasn't this placed right? Now, that tells me it was not where it's supposed to be, and it also was contrary to the policy to be there. That doesn't self-establish liability. It's just one piece of evidence from which a jury could conclude that. Now, you can argue against the strength of it, but that doesn't — we assume now, in a summary judgment context, that a jury's going to have to decide that, whether it's believable or not. I see nothing speculative about a statement from the assistant manager that it's placed wrong. Well, and that would be contrary to Walmart's position, which is, how does that assistant manager look at that thing, and how does he know? Of course it's contrary to Walmart's position. No, but the reason being — the reason being, and this is the crux of the case, is how do you look at a crooked pallet on the floor? It's no different than saying the manager comes up and someone has slipped on a banana peel, and he says, how did that banana peel get there? Right. And this is — that's exactly this case. That's exactly this case. And you could say — Whoa, whoa, whoa. Wait a minute. It's not this case. For heaven's sakes. A banana peel, it's a stranger to the system. This is part of your equipment. And your persons are saying you put your — this product in the wrong place. Now, that has nothing to do with a banana peel. I mean, of course, a banana peel is a very different breed of cat. It's very hard to get a slip and fall case on them because it's down to whether or not the store owner knew or whatever of that thing. That's a separate issue. Well, let's talk about how those things are the same or different because I think that's really important. You've got a banana peel on the floor. Probably what happened was somebody ate it and they dropped it there, and that could have been — that could have — The monkey did it. I don't know. I'm sorry? The monkey came through the store eating banana. It doesn't matter. That's true. That's true. But that same monkey could have come in and bumped into that pallet unless it's too heavy to move. And if it's too heavy to move, then we're out of luck. But we don't know that it's not so light that you can bump into it and you can move that thing. We have a responsibility at Walmart to put the bananas — Can I ask a question? Sure. I'm sorry, Judge. I appreciate your enthusiasm. The — I look at that piece of evidence, and what it says is, to me, is there is evidence which a jury can conclude that that particular thing was not where it was supposed to be, where Walmart didn't intend it to be, that it was improperly placed. Now, what you do with that is another step in the game. Whether it was there long enough in that position to — or whether it was open and obvious, it doesn't speak to those. But it does, a jury, to me, plainly can conclude that — or not, that that particular thing was in the wrong place. May I speak to that point, Your Judge? And that that was perhaps what you tripped on. I think this is all asked and answered. Why don't you move on, counsel? All right. We've heard this. All right. But can I just briefly address that? Because I think it's very important, the way that — I think you better move on. All right. All right, Judge. Okay. So I think — You want a slip and fall. Go ahead. I'm sorry, Judge? If you want a slip and fall of argument, move ahead. All right. So I think that we've covered some of the evidence of actual notice. One thing we haven't talked about are the pallets. And basically, with the pallets, we have a plaintiff who used to work at Walmart a number of years ago who says there's a different kind of pallet. You should have used a different kind of pallet. But again, it's a very undeveloped record. We don't know that those pallets were ever used at this store. We don't know that they're still available. We don't know that they were — there wasn't some problem where they were discontinued. We don't know, even with the wooden pallet that was used, we don't know that there weren't some kind of covers or some method to cover those holes so that you don't trip in them and that when the pallet got bumped by whoever bumped it, that those covers came off. They got lost. Something happened to them. We don't have any evidence. That's all evidence that could have been developed in this case, and I don't know which way it goes. It wasn't developed. But we don't know. We don't know that those pallets, those black plastic pallets, would have been effective. We don't really know what they look like. We don't know that they would have made a difference in this case. And we don't know that the wooden pallet that was used wasn't in some way covered and then came uncovered. It's all speculation on that point as well. And I think we've covered most of the other issues on the actual notice element. On the obviousness point, that's an independent ground on which summary judgment can be affirmed. And basically the idea here is that you've got a plaintiff who's testifying that this pallet is sticking so far out that it's blocking traffic in the store and you can't get a cart through because it's sticking so far out, and then wants to turn around and say, well, but it wasn't obvious. I couldn't tell. I couldn't see. And give several reasons. First, the plaintiff testifies that she kept a, quote, unquote, proper lookout, but doesn't go into what that means. It's a purely conclusory claim. It's not explained. And it's also purely subjective. And it's clear, the Texas Supreme Court has made it clear, this is not a subjective standard. Did the plaintiff see or not see the condition? She didn't claim that she sped past it or was trying to blow past it. No. No. All this business about the aisle being blocked, what she says is she did exactly what Walmart wanted her to do, which is to see a display, develop some interest, or at least become interested in looking at what was on the display, and then she stopped at that display. They display the products so you can look at them and hopefully buy them. That's correct. That's exactly what she did. Right. So whether or not it was blocking an aisle, she wasn't trying to get through an aisle. She was trying to get to the display, and she did it. Well, and that's correct. But my point is not that we prevented her from getting around it. My point is that if it's sticking that far out, you're going to see it. It's obvious. And the reasons that she gives for not seeing it really don't quite compute. For example, she's saying the shopping cart is blocking her view. She can't see this thing sticking out because the shopping cart is blocking her view. But as has kind of been discussed by both counsel and Judge Jones, you can't, you know, it's not like this other case where you've got these vegetable clippings and you run over them with your cart, you never see them, and then you slip and fall on them. This is a big pallet. It's a big shopping cart. You're going to bang the wheels into it if it's between you, as the plaintiff testifies. If it's blocking your view, it's got to be between you and the pallet. And if that's the case, you literally cannot trip over it. It's impossible. So her reason why she couldn't see it, because her cart's in the way, doesn't work. What had to have happened was she turns the cart to the side, she gets closer to the nail polish display, and now her foot can get caught in that thing, true, but at the same time she can now see it because it's sticking out so far you can't get through the aisle. It's not just a little, you know, slightly askew. This is catty corner. It's sticking out so far you can't get past it. And so when she turns that shopping cart to the side, it's right there, it's in plain view, it's obvious, and she doesn't see it. Of course, she's at eye level looking at the merchandise. Do we know precisely how the pallet was misaligned? In other words, the pallet could have been in its place, and somebody had knocked the display. Well, I think that is— Is that a possible view of the evidence? That's an open question. Now what the plaintiff testifies to is that the display is aligned straight and it's the pallet that's crooked, but you really don't know. Maybe the intent was to put the pallet in a diagonal with the other merchandise and then to put the display correctly aligned on that so now it's in kind of a diamond shape as you approach it walking down the aisle. We don't know. We don't know if it's the platform that's out of place. We don't know if it's the display that's out of place. Could we assume that if there had been photos that were inconsistent with the plaintiff's story that Walmart would have offered them even though you didn't have the burden of proof? Well, we did offer the photos that are—the photo that's in front of you, and there's similar photos in the record. Walmart did offer that. I'm not making that an issue for this summary judgment, but the fact that Walmart sees that as the accident scene photos and the plaintiff sees those photos as not accurately depicting, because that's going to be an issue of credibility. It's going to be an issue of who do you believe, and that's not a summary judgment issue. So I think that disregard that, we still have summary judgment because it doesn't matter. Thank you. Mr. Moms. Thank you, Your Honor. Judge Higginbotham, I feel like you stole my rebuttal. I mean, the store manager came in and looked at this thing and said, why wasn't this palette placed right? He didn't say, how did this happen? He didn't say, how did this get moved? He didn't say, why is this not where it should be? He said, why was this palette not placed right? And that indicates his awareness that the problem is with the way in which the palette was placed. And he could reasonably conclude that it was misplaced. Let me just, not to belabor this too much, but with regard to the banana peel, it is the store that is responsible for putting the bananas up on the counters. And therefore, the banana peel is not much, not really significantly unlike the grape cuttings that were on the floor. And then the question is constructive knowledge. But who put the grape cuttings on the floor is not proven by the fact that the manager comes there and says, how did these grape cuttings manage to be on this floor? You know, it's not necessarily an admission of liability. But it is an admission that it's in the wrong place. Well, so is the banana peel. No, it's an admission that it's in the wrong place. And given the other evidence of the nature, it's not a banana peel in the sense that this is a wooden palette and it's part of the store structure itself, not by other persons. And the question of whether the jury could determine whether or not that could have been accidentally moved by a customer or not, that's just a desperate fear of juries. I don't know. Well, I think it's reasonable for a jury to hear that comment and say that it's not just an admission that it was in the wrong place, but that it was placed in the wrong place when Mark created the display. My question moves on from that to the question of any proof of whether the – you have to show that this condition was there and that the store had knowledge of it or constructive knowledge of it because it had been there for a period of time. And if we get those in liquid cases and so forth, you have to get evidence of whether somebody had seen the puddle there and so on and so forth. I don't recall any evidence here as to how long that might have been there. Right. And that's the direction the district court went, but that's not the only way to show actual knowledge in a Texas premises liability case. If you show that the premise owner created the condition, that the owner created the condition, you don't need to show how long it's been there. And that's our position, that Wal-Mart created this condition when it placed this pallet caddy corner with the display on it a different direction, and that's what the manager recognized when he said, why wasn't this pallet placed right? The statement from the employee that it was improperly placed then moves you away from the – it believed the jury would eliminate the requirement that you demonstrate that it had been there sufficiently long period for them to have constructive knowledge. Correct, Your Honor. It's really – under Texas law, it's deemed actual knowledge, not constructive knowledge, when the premise owner creates the condition. Okay. I see that my time has expired. Are there any other questions? Thank you. Thank you. All right, the final case of the morning is number 16, 41521.